**<u>EXHIBIT "A"</u>**

## CONFIDENTIAL SETTLEMENT AGREEMENT

This CONFIDENTIAL SETTLEMENT AGREEMENT (the "Agreement") is between Mary Jackson, individually and on behalf of all others similarly situated, and HealthPort Technologies, LLC ("HealthPort") (collectively, the "Parties").

WHEREAS, on February 9, 2011, Mary Jackson filed a putative class action complaint against HealthPort in the United States District Court for the Northern District of Mississippi, Greenville Division, alleging claims under the Fair Labor Standards Act for failure to pay minimum wage and for recovery of overtime compensation, captioned *Mary Jackson, on behalf of herself and others similarly situated v. HealthPort Technologies, LLC*, docketed as Case No. 4:11-CV-012-P-S (the "Litigation"); and

WHEREAS, on March 25, 2011, Leah Boyd, Atrelia Johnson, and Sheenon Heath filed Notices of Consent to Join the Litigation as plaintiffs; and

WHEREAS, on March 30, 2011, Peggy Jackson filed a Notice of Consent to Join the Litigation as a plaintiff; and

WHEREAS, on May 16, 2011, Karyn Cox filed a Notice of Consent to Join the Litigation as a plaintiff; and

WHEREAS, on May 23, 2011, the Litigation was transferred to the United States District Court for the Northern District of Georgia, Atlanta Division, docketed as Case No. 1:11-CV-01687-SCJ; and

WHEREAS, on June 6, 2011, Mary Jackson filed a Motion for Conditional Class Certification and Court-Authorized Notice, which motion is currently pending; and

WHEREAS, Mary Jackson filed a First Amended Complaint on June 29, 2011, adding claims for unjust enrichment; and

WHEREAS, on July 14, 2011, Kimeal Anderson, Danyell Crespo, and Kim Hargain filed Notices of Consent to Join the Litigation as plaintiffs; and

WHEREAS, on July 26, 2011, Peggy Curtis filed a Notice of Consent to Join the Litigation as a plaintiff; and

WHEREAS, the Parties engaged in extensive settlement discussions, through the use of an experienced and nationally respected mediator, Hunter Hughes, and otherwise, now desire to bring this lawsuit to an amicable resolution on terms set forth herein; and

WHEREAS, the Parties, understanding the risks inherent in continued litigation, believe these terms are fair and that settlement of Plaintiffs' claims is in the best interest of all Parties; and

WHEREAS, the Parties enter into this Agreement acknowledging that nothing herein is or shall be construed as an admission of liability by HealthPort, which denies any wrongdoing or liability whatsoever;

NOW, THEREFORE, with the intent to be legally bound hereby, and in consideration of the mutual covenants contained herein, the parties agree as follows:

1.    **DEFINITIONS**

1.1    "**Approved Claim**" or "**Approved Claims**" means a Claim or Claims submitted by way of a Claim Form which are approved by the Claims Administrator for payment.

1.2    "**Approved Claimants**" means those Claimants who have submitted an Approved Claim.

1.3    "**Attorneys' Fees and Costs**" means the agreed portion of the Gross Settlement Amount attributed to attorneys' fees and costs that shall cover all work performed and all fees and costs incurred by Class Counsel in this litigation, including all work to date, all work to be performed and all fees and costs to be incurred in connection with obtaining the Court's approval of this Settlement, Class Counsel's work in connection with the administration of the Settlement, and obtaining final judgment with prejudice of the Action, as further defined in this Agreement.

1.4    "**Claim**" means any Claim submitted by way of a Claim Form.

1.5    "**Claim Form**" or "**Notice of Award, Claim Form and Settlement Class Member Release**" means the form sent to Settlement Class Members containing each Settlement Class Member's estimated Settlement Award and a release of claims against HealthPort. The proposed Claim Form shall be substantially similar to the form attached as Exhibit A.

1.6    "**Claimant**" means any Class Member who submits a Claim.

1.7    "**Claims Administrator**" means _____, the company the Parties have designated to administer the claims process and payments provided for under the Agreement. The Claims Administrator shall also serve as administrator of the Qualified Settlement Fund. References to the Claims Administrator shall refer to the Claims Administrator in its capacity as Claims Administrator and/or as administrator of the Qualified Settlement Fund as necessary to implement the terms of this Agreement.

1.8    "**Claims Administrator Costs**" means all costs, expenses, and time incurred by the Claims Administrator for the administration of this Settlement, including (i) preparing, issuing, printing, mailing, and monitoring all necessary notices, declarations, filings, and tax related documents; (ii) computing the Settlement Awards, applicable taxes, and any other payments to be made; (iii) establishing or maintaining the Qualified Settlement Fund; (iv) distributing payments; (v) any related communications with Class Members or Class Counsel; and (vi) any other obligations mandated by this Agreement for the Claims Administrator, as ordered by the Court, or as maybe agreed upon by the parties.  Subject to the terms of this

Agreement and the Court's approval, such costs are currently estimated to be not more than a maximum total sum of $30,000.

1.9    **"Class," "Class Member,"** or **"Class Members"** means all persons who, on or before September 29, 2011, were employed by HealthPort as a Scan/Copy Rep, ROI Specialist, ROI Specialist 1, ROI Specialist 2, Sr. ROI Specialist, Site Coordinator, or Service Specialist at any location any time from February 9, 2008 to September 29, 2011; earned less than $100,000 per year; and were production-paid or commission-paid.

1.10    **"Class Counsel"** means the law firm of Morgan and Morgan, PA.

1.11    **"Class Period"** means February 9, 2008 to September 29, 2011.

1.12    **"Class Recovery"** means $733,333.33, which represents the Gross Settlement Amount minus Attorney's Fees and Costs.

1.13    **"Court"** means the United States District Court for the Northern District of Georgia and any appellate court which may review any orders entered by the United States District Court for the Northern District of Georgia related to this Settlement.

1.14    **"Enhancement Award"** means the proposed $5,000 award to be paid to Plaintiff and $2,500 award to be paid to each Opt-in Plaintiff in recognition of their efforts and any risks (financial, professional, and emotional) taken in commencing this Litigation and for their agreement to maintain the confidentiality of the terms and amount of this Settlement.

1.15    **"Exclusion Letter"** means the letter which a Settlement Class Member must send to the Claims Administrator in accordance with Section 6.7 of this Agreement if the Settlement Class Member wishes to exclude himself or herself, or opt out, from the Settlement Class and from the release of claims applicable to the Settlement Class from which the Settlement Class Member is excluding himself or herself.

1.16    **"Final Approval Hearing"** means the hearing during which the Court makes the final decision on whether to approve this Agreement as fair, reasonable, and adequate.

1.17    **"Final Approval Order and Judgment"** means an order and judgment certifying the Class for settlement purposes only, approving the Settlement and entering Final Judgment.

1.18    **"Final Settlement Date"** means the date when the latest of any of the following events occurs:

    1.18.1    The date the time to appeal or seek permission to appeal or seek other judicial review of the entry of a Final Approval Order and Judgment has expired with no appeal or other judicial review having been taken or sought; or

    1.18.2    If an appeal or other judicial review has been taken or sought: (i) the date the Final Approval Order and Judgment is finally affirmed by an appellate

court with no possibility of subsequent appeal or other judicial review therefrom; or (ii) the date the appeal(s) or other judicial review therefrom are finally dismissed with no possibility of subsequent appeal or other judicial review; or (iii) if remanded to the Court or to a lower appellate court following an appeal or other review, the date the Final Approval Order and Judgment is entered by the Court after remand and the time to appeal or seek permission to appeal or seek other judicial review of the entry of that Final Approval Order and Judgment has expired with no further appeal or other judicial review having been taken or sought.  If further appeal is sought after a remand, the time periods in this subsection shall also apply to any such appeal.

1.19    **"FLSA"** means the Fair Labor Standards Act, 29 U.S.C. § 201, et seq.

1.20    **"Gross Settlement Amount"** means the amount, up to One Million One Hundred Thousand and No/100ths Dollars ($1,100,000.00), that HealthPort agrees to pay to resolve the Litigation for all Class Members on an opt-out, claims made basis.  HealthPort's obligations under this Agreement or the Settlement shall never exceed the Gross Settlement Amount.

1.21    **"HealthPort"** means HealthPort Technologies, LLC as well as its past, present and future officers, directors, administrators, shareholders, employees, agents, attorneys, insurers, and representatives; any past, present or future successors, subsidiaries, parents, affiliated or related corporations; insurers of those entities; all benefit plans sponsored by HealthPort, and each of their respective past, present and former agents, employees, or representatives, insurers, partners, associates, successors, and assigns, in any and all capacities (including but not limited to the fiduciary, representative, or individual capacity of any released person or entity); and any entity owned by, related to or affiliated with any of the above.

1.22    **"HealthPort Counsel"** means the law firm of Nelson Mullins Riley & Scarborough LLP.

1.23    **"Named Plaintiff"** means Mary Jackson in her individual capacity, and each of her respective successors, assigns, legatees, heirs, agents and personal representatives.

1.24    **"Notice"** means the legal notice of the proposed Settlement terms, as approved by Class Counsel, HealthPort Counsel, and the Court.  The proposed Notice shall be substantially similar to the form attached as Exhibit B.

1.25    **"Objector"** means any Settlement Class Member who files an objection to the Settlement in accordance with Section 6.5 of this Agreement.

1.26    **"Opt-In Plaintiffs"** means Leah Boyd, Atrelia Johnson, Shecnon Heath, Peggy Jackson, Karyn Cox, Kimeal Anderson, Danyell Crespo, Kim Hargain, and Peggy Curtis in their individual capacities, and each of their respective successors, assigns, legatees, heirs, agents and personal representatives.

1.27    **"Preliminary Approval Order"** means the order preliminarily approving the Settlement, certifying a provisional Settlement Class, providing for notice, setting a date for the

Final Approval Hearing, appointing Class Counsel and the class representatives, and ordering creation of the Qualified Settlement Fund.

1.28    **"Qualified Settlement Fund"** means the Qualified Settlement Fund to be created in accordance with Section 3.4 of this Agreement.

1.29    **"Settlement"** means the settlement of this Litigation and related claims effectuated by this Agreement.

1.30    **"Settlement Class," "Settlement Class Member,"** or **"Settlement Class Members"** mean Class Members who do not timely submit a written statement opting-out of this Settlement.

1.31    **"Settlement Award"** means the amount of money to be paid to each Settlement Class Member.

## 2    CERTIFICATION OF SETTLEMENT CLASS

2.1    As part of this Settlement, Class Counsel and HealthPort Counsel shall request that the Court enter an order certifying the Class for settlement purposes in accordance with this Agreement.  Solely for purposes of settling this case, the Parties stipulate and agree that the requisites for class certification under Federal Rule of Civil Procedure 23 (numerosity, commonality, typicality, and adequacy of representation) have been met with respect to the Class.  The form of class certification order shall, subject to Court approval, expressly state that the Parties, Class Counsel and HealthPort Counsel agree that certification of the Class is a conditional certification for settlement purposes only, and that HealthPort retains its right to object to certification of this Litigation, or any other wage and hour class or collective action, or any other class action, under Rule 23, the FLSA, or any other applicable rule, statute, law, or provision.

2.2    The Parties, Class Counsel and HealthPort Counsel agree that, if approved, certification of the Class is a conditional certification for settlement purposes only, and if for any reason the Court does not grant final approval of the Settlement, or if final approval is not given following the appeal of any order by the Court, or if for any reason the Final Settlement Date does not occur, the certification of the Class for settlement purposes shall be deemed null and void without further action by the Court or any of the Parties, and each Party shall retain all of its respective rights as they existed prior to execution of this Agreement, and neither this Agreement, nor any of its accompanying exhibits or any orders entered by the Court in connection with this Agreement, shall be admissible or used for any purpose in this Litigation.

2.3    The Parties, Class Counsel and HealthPort Counsel agree that, if approved, certification of the Class for settlement purposes is in no way an admission by HealthPort that class certification is proper in this Litigation for any purpose other than for settlement, in any other wage and hour litigation, or in any other litigation, against HealthPort.  Other than for settlement purposes, HealthPort continues to assert that this Litigation fails to meet the prerequisites necessary for class or collective action treatment under applicable law, especially, but not solely, with respect to predominance and manageability because the need to determine individualized issues makes the case unmanageable consistent with due process.  The Parties,

Class Counsel and HealthPort Counsel further agree that, other than to effectuate the Settlement of this Litigation, the certification of the Class for settlement purposes and all documents related thereto, including this Agreement and all accompanying exhibits and all orders entered by the Court in connection with this Agreement, are not intended to be admissible in any judicial, arbitral, administrative, investigative, or other court, tribunal, forum, or other proceeding, including without limitation any wage and hour litigation, or any other litigation, against HealthPort.

2.4    HealthPort denies any liability or wrongdoing of any kind whatsoever associated with the claims alleged in the First Amended Complaint, and further denies that, for any purpose other than settling the Litigation, the claims in the Litigation are appropriate for treatment as a class action. HealthPort categorically denies any liability or wrongdoing of any kind whatsoever associated with any allegations of wage and hour violations against HealthPort, including but not limited to minimum wage or overtime violations, breach of contract or unjust enrichment, and whether or not pled in the First Amended Complaint. HealthPort contends that it has at all times complied fully with the requirements of the federal Fair Labor Standards Act and all other laws regarding the payment of wages to employees.

2.5    It is the desire of the Parties to fully, finally, and forever settle, compromise, and discharge all disputes and claims arising from or related to the First Amended Complaint in this case, or which could have been raised in the First Amended Complaint in this case. In order to achieve a full and complete release of HealthPort, Plaintiffs, for themselves and on behalf of the Class, acknowledge that this Settlement Agreement is intended to include in its effect, to the fullest extent permitted by law, all claims of any nature alleging failure to pay wages, including but not limited to claims under the Fair Labor Standards Act, claims for minimum wage or overtime under the FLSA or applicable state law, or under the common law or otherwise, under any legal or equitable theory, including but not limited to claims of breach of contract, unjust enrichment or quantum meruit alleged against HealthPort as of the date of the Court's Preliminary Approval Order. Plaintiffs agree and acknowledge that the Settlement Class Member Release to be executed by Settlement Class Members as a condition of receiving their respective Settlement Awards shall include in its effect, to the fullest extent permitted by law, all claims of any nature alleging failure to pay wages by HealthPort, including but not limited to claims alleging violations of the FLSA, as set forth below.

2.6    The Parties agree to cooperate and take all steps necessary and appropriate to obtain final judgment.

2.7    At all times, Morgan and Morgan, PA has been counsel of record for Plaintiffs. As defined in Section 1.10, for purposes of this Settlement only, Morgan and Morgan, PA shall be designated as Class Counsel. Class Counsel has conducted a thorough investigation into the facts of this class action, including an extensive review of relevant documents, and has diligently pursued an investigation of Class Members' claims against HealthPort. Based on its own independent investigation and evaluation, Class Counsel is of the opinion that the Settlement with HealthPort for the consideration and on the terms set forth in this Agreement is fair, reasonable, and adequate and is in the best interest of the Settlement Class in light of all known facts and circumstances, including the risk of significant delay, the risk the Class will not be

6

certified by the Court, defenses asserted by HealthPort, and potential appellate issues. HealthPort and HealthPort Counsel also agree that the Settlement is fair.

## 3    SETTLEMENT TERMS

3.1    **Gross Settlement Amount.** HealthPort will pay to the Qualified Settlement Fund an amount not to exceed One Million One Hundred Thousand and No/100ths Dollars ($1,100,000.00) to resolve the Litigation for all Class Members on a claims-made, opt-out basis, which shall be sufficient to cover claims for Class Counsel's attorneys' fees and costs, Enhancement Awards to Named Plaintiff and the Opt-In Plaintiffs, calculated Settlement Awards to eligible Settlement Class Members as reasonably determined by the Claims Administrator consistent with this Agreement, and Attorney's Fees and Costs. The Gross Settlement Amount transferred to the Claims Administrator will be net of any Settlement Awards allocated to Class Members who opt out or fail to timely execute and return a Claim Form. At no point will HealthPort be obligated to pay any sum in excess of the Gross Settlement Sum. Subject to the other terms and conditions of this Agreement, and subject to Court approval, HealthPort agrees that the Gross Settlement Amount shall be allocated as follows:

3.1.1    **Settlement Awards.** Payment to the members of the Class shall be made on a claims-made basis to the members of the Class who submit a timely and valid Claim Form in accordance with Section 6 of this Agreement.

3.1.2    **Enhancement Awards.** Class Counsel shall request that, subject to Court approval, Plaintiff be paid an Enhancement Award of $5,000.00 and the Opt-In Plaintiffs be paid Enhancement Awards of $2,500.00 each. The Enhancement Awards shall be paid from the Gross Settlement Amount. HealthPort will not oppose Named Plaintiff's and the Opt-In Plaintiffs' request for an Enhancement Award in recognition of their efforts and any risks (financial, professional, and emotional) taken in commencing this Litigation and for their agreement to maintain the confidentiality of the terms and amount of this Settlement, and agrees that this sum is reasonable.

3.1.3    **Attorney's Fees and Costs.** Class Counsel shall apply to the Court for an award of Attorneys' Fees and Costs which shall be paid from the Gross Settlement Amount. HealthPort will not oppose Class Counsel's application for Attorneys' Fees and Costs. In addition, on request of Class Counsel, Hunter Hughes, who mediated the settlement of the Litigation, will evaluate Class Counsel's application for an award of Attorneys' Fees and Costs. Such evaluation shall be at the sole cost of Named Plaintiff and/or Class Counsel. HealthPort will not oppose Class Counsel's adequately documented application for attorneys' fees of up to a maximum of $366,666.67, and agrees that these sums are reasonable in light of Class Counsel's efforts, risks incurred, and results achieved. The awarded attorneys' fees and costs will be paid out of the Gross Settlement Amount. The awarded attorneys' fees and costs shall cover all work performed and all fees and costs related to the Litigation or Class

Counsel's efforts with respect to the claims administration process, and all work to be performed and all fees and costs to be incurred in connection with the approval by the Court of this Agreement, the administration of the Settlement, obtaining a Preliminary Approval Order and a Final Approval Order and Judgment, but does not include Claims Administrator Costs.

3.2     **Claims Administrator Costs.**   HealthPort shall pay reasonable Claims Administrator Costs including the costs of providing Notice in accordance with Section 5 of this Agreement and costs in connection with processing Claims in accordance with Section 6 of this Agreement.

3.3     **Dismissal and Judicial Release.**  In exchange for HealthPort's consideration, and upon the Court's Final Approval Order and Judgment, Settlement Class Members, Named Plaintiff and the Opt-In Plaintiffs will release HealthPort from any and all liability for certain claims in accordance with Section 7 below, and the Litigation shall be dismissed with prejudice. The Court shall retain jurisdiction to enforce the provisions of this Agreement.

3.4     **Qualified Settlement Fund.**   The parties will seek the Court's order, in conjunction with its Preliminary Approval Order, establishing a Qualified Settlement Fund, as required by Treas. Reg. Section 1.468B-1. At the times required by this Agreement, HealthPort shall transfer sums to the Claims Administrator to be held as a separate trust constituting a Qualified Settlement Fund as described in Treasury Regulation §1.468B-1, 26 C.F.R. §1.468B-1. Class Counsel and HealthPort jointly shall, and shall cause the Claims Administrator to, take such steps as shall be necessary to qualify the Qualified Settlement Fund under §468B of the Internal Revenue Code, 26 U.S.C. §468B, and the regulations promulgated pursuant thereto. HealthPort shall be considered the "transferor" within the meaning of Treasury Regulation § 1.468B-1 (d)(1). The Claims Administrator shall be the "administrator" within the meaning of Treasury Regulation § 1.468B-2(k)(3) and will perform such duties as are required of the Claims Administrator and the administrator of the Qualified Settlement Fund.   The Parties shall cooperate in securing an order of the Court to establish the Qualified Settlement Fund in accordance with the terms hereof. The administrator of the Qualified Settlement Fund shall have the responsibility for determining all awards and other payments, as well as responsibility for all tax information, return, and withholding obligations under the Internal Revenue Code, as amended, with respect to all amounts paid to eligible Settling Class members out of the Qualified Settlement Fund pursuant to this Agreement. The parties agree that the Qualified Settlement Fund is intended to be a qualified settlement fund under the requirements of Treasury Regulations Section 1.468B-1(c). The Settlement Fund shall be established and administered in accordance with Treasury Regulations Sections 1.468B-1 to 1.468B-5, and all transfers of cash or property to or from the Settlement Fund shall be made in compliance with such Treasury Regulations.

4     <u>SETTLEMENT APPROVAL</u>

4.1     **Request for Preliminary Approval and Provisional Class Certification.**  As soon as practicable after the signing of this Agreement, the Parties shall move for preliminary approval of this Agreement and provisional certification of a class action. Class Counsel shall

draft the moving papers and give HealthPort Counsel drafts of the motion and proposed order to review at least seven (7) days before the motion's filing deadline. The motion shall request the Court to:

    4.1.1    Preliminarily approve the terms of the Settlement as set forth in this Agreement as being fair, reasonable, and adequate;

    4.1.2    Preliminarily approve the form, manner, and content of the Notice and Claim Form;

    4.1.3    Order establishment of a Qualified Settlement Fund;

    4.1.4    Provisionally certify a class action under Federal Rule of Civil Procedure 23 for settlement purposes only;

    4.1.5    Appoint Plaintiff, Mary Jackson, as the class representatives;

    4.1.6    Appoint Morgan and Morgan, PA as Class Counsel;

    4.1.7    Appoint the Claims Administrator; and

    4.1.8    Set the date and time of the Final Approval Hearing.

HealthPort shall fully cooperate with Class Counsel to obtain preliminary approval.

    4.2    **Request for Final Approval.** After the Claims Administrator has delivered the report required by Section 6.4, the parties shall move for Court approval of a Final Approval Order and Judgment. Class Counsel shall draft the moving papers and give HealthPort Counsel drafts of the motion and proposed order to review at least seven (7) days before the motion's filing deadline. The motion shall request the Court to:

    4.2.1    Approve the Settlement, adjudging the terms thereof to be fair, reasonable, and adequate and directing consummation of its terms and provisions;

    4.2.2    Approve Class Counsels' application for an award of Attorneys' Fees and Costs;

    4.2.3    Approve the Enhancement Awards and the payments to Named Plaintiff and the Opt-In Plaintiffs;

    4.2.4    Finally certify the Class for settlement purposes pursuant to this Agreement;

    4.2.5    Dismiss this Litigation on the merits and with prejudice.

HealthPort shall fully cooperate with Class Counsel to obtain final approval and the dismissal of the Litigation.

5      NOTICE TO THE CLASS

5.1     No later than seven (7) days after entry of the Preliminary Approval Order, HealthPort shall provide to the Claims Administrator a listing of all members of the Class, including Social Security numbers, dates of birth, last known addresses and, as reasonably available to HealthPort, telephone numbers (the "Class Lists"). The Class Lists shall be based on the data kept in the ordinary course of business in HealthPort's payroll and employee databases. The Class Lists shall be provided in Access, Excel or other similar format as reasonably requested by the Claims Administrator. The Parties agree that the contents of the Class Lists are confidential, shall be used solely for purposes of this Litigation, and shall not be shared with third-parties other than the Claims Administrator, who shall also agree to keep the contents of the Class Lists confidential.

5.2     No later than seven (7) days after entry of the Preliminary Approval Order, HealthPort shall provide to the Claims Administrator a listing of all members of the Class, each Class Member's commission earnings during the Class Period, and the total commissions earned by the Class during the Class Period (the "Class Information"). The Parties agree that the information to be provided pursuant to this Agreement is confidential and shall not be shared with third-parties other than the Claims Administrator, who shall also agree to keep such information confidential.

5.3     No later than fourteen (14) days after the Claims Administrator's receipt of the Class Information from HealthPort, the Claims Administrator shall provide Class Counsel and HealthPort Counsel with a report listing the Settlement Award allocated to each Class Member. The Parties agree that the Settlement Award shall be calculated as follows:

> 5.3.1   **Initial Calculation.**  The Claims Administrator shall divide each Class Member's commission earnings during the Class Period by the total commissions earned by the Class during the Class Period. The Claims Administrator will then multiply that percentage times the Class Recovery to determine each Class Member's Settlement Award.

> 5.3.2   **Disallowance of De Minimis Claims.**  Twenty Dollars ($20.00) shall be the minimum award to any Class Member (the "**Minimum Award**"). In the event that a Class Member's allocation of the Gross Settlement Amount is less than the Minimum Award, such Settlement Award shall be deemed paid and shall remain in the Qualified Settlement Fund for the benefit of and payment to other Class Members. After the Initial Calculation has been performed, the Class Administrator shall remove all Class Members whose Settlement Award is less than the Minimum Award, and subtract their commission earnings from the total commissions earned by the Class during the Class Period.

> 5.3.3   **Final Calculation.**  After all De Minimis Claims have been disallowed as provided in Section 5.2.2, the Class Administrator shall recalculate the Settlement Awards for all remaining Class Members ("**Recovering Class**

Members") using the formula set forth in Section 5.2.1, which shall constitute the totals to be set forth in the report required by Section 5.2.

5.4 **Audit and Challenge Procedure.** HealthPort shall have the right to audit the each Recovering Class Member's Settlement Award, and to challenge the Claims Administrator's calculations and the amount the Claims Administrator proposes to pay to each Recovering Class Member, in accordance with the following procedure. The Claims Administrator shall not calculate taxes or withholdings applicable to any Claim and shall not distribute any monies to any Claimant until after the audit process has concluded.

5.4.1 Within seven (7) days of having received the report set forth in Section 5.2 from the Claims Administrator, Class Counsel and HealthPort Counsel shall meet and confer regarding any issues that HealthPort believes needs to be raised with the Claims Administrator or Hunter Hughes. Class Counsel and HealthPort Counsel agree to use their best efforts to resolve any disputes. If Class Counsel and HealthPort Counsel cannot resolve these issues within fourteen (14) days of having received all the Claim Form spreadsheets from the Claims Administrator, then HealthPort may provide written notice of its intent to audit the Claims Administrator's determinations with respect to a particular Claim or Claims.

5.4.2 Audits may be presented to the Claims Administrator or to Hunter Hughes, at HealthPort's election. If the audit is first filed with the Claims Administrator, the decision of the Claims Administrator may be appealed to Hunter Hughes within seven (7) days of receipt of the Claims Administrator's decision. All decisions by Hunter Hughes regarding audits are binding, final decisions which shall not be subject to appeal. If a decision by the Claims Administrator is not presented to Hunter Hughes within seven (7) days of receipt, the decision of the Claims Administrator becomes a binding, final decision not subject to further appeal.

5.4.3 HealthPort may invoke its right to audit by providing written notice to Class Counsel and to the Claims Administrator. If the audit is directly to Hunter Hughes, or in the event of an appeal of a decision by the Claims Administrator, HealthPort shall also provide notice to Hunter Hughes. The notice shall identify the Claim or Claims that are the subject of the audit, and may be accompanied by supporting papers of no more than two (2) pages (excluding exhibits) for each Claim being audited.

5.4.4 Within seven (7) days of receipt of the notice and supporting papers, Class Counsel may submit a written response of no more than two (2) pages (excluding exhibits) for each Claim being audited.

5.4.5 The Claims Administrator or Hunter Hughes shall decide any audits presented to them within fourteen (14) days of final submission.

5.4.6   The time periods and page limits set forth in this Section may be extended by agreement of the Parties, or by Hunter Hughes, for good cause shown.

5.4.7   Notice of audits, any paperwork submitted in support of, or in response to, any audit, and the decisions by the Claims Administrator or Hunter Hughes shall be served by email and United States Mail.

5.5   Within fourteen (14) days of the Parties' approval of the report set forth in Section 5.2, or fourteen (14) days after the deadline for audits allowable under Section 5.3 has expired, whichever is later, the Claims Administrator shall mail Notice to Recovering Class Members whose addresses are reasonably available, by first class mail. All Claim Forms shall be included with the mailed notice. The mailed notice shall include instructions about how to obtain and submit a Claim Form, how to exclude oneself from the Settlement, how to object to the Settlement, and the dates set by the Court for submission of claims, requests for exclusion, objections, and for the hearing on final approval of the Settlement.

5.6   The form of mailed Claim Form to Recovering Class Members agreed to by the Parties subject to Court approval is attached hereto as Exhibit A.

5.7   Prior to mailing the Claim Forms to former HealthPort employees, the Claims Administrator shall process the Class Lists against the National Change of Address Database maintained by the United States Postal Service.

5.8   It shall be conclusively presumed that if the Claim Forms are not returned as undeliverable, the Recovering Class Member to whom the Claim Forms were mailed received the Claim Forms. If Claim Forms are returned with forwarding address information, the Claims Administrator shall re-mail the Claim Forms to the forwarding address. With respect to Claim Forms that are returned as undeliverable, the Claims Administrator shall use standard skip tracing devices based on Lexis/Nexis or similar databases to obtain forwarding address information and shall forward returned mail to ensure that the Claim Forms are sent to those Recovering Class Members for whom address information is reasonably available. If re-mailing based on forwarding addresses or skip tracing is necessary, the Claim Forms shall be re-mailed as soon as reasonably practicable after the receipt of the returned mail. If the Claim Forms are returned without a forwarding address after re-mailing, it shall be presumed that the Recovering Class Member cannot be located by mail. Skip tracing shall only be performed once; if Claim Forms are returned as undeliverable after skip tracing has been performed with respect to a particular Recovering Class Member, it shall be presumed that the Recovering Class Member cannot be located by mail.

6   **CLAIMS, EXCLUSION, OBJECTION, AND DISTRIBUTION PROCESS**

6.1   The Notices mailed to Recovering Class Members shall set a date of ninety (90) days from the date on which the Claim Forms are initially mailed as the deadline by which members of the Class must submit their completed Claim Forms (the **"Form Submission Deadline"**). No Claim Forms will be honored if postmarked after the Form Submission Deadline. All original Claim Forms shall be sent to the Claims Administrator. If a claimant

mistakenly sends a Claim Form to Class Counsel, Class Counsel shall promptly forward the documents to the Claims Administrator.

6.2    The Parties and Class Counsel agree that the dollar values allocated to claims submitted under the Claim Forms, and the language used in the Claim Forms, are for purposes of this Settlement only and are not otherwise admissible as evidence, as an admission by HealthPort, or for any other purpose in this Litigation or in any other judicial, arbitral, administrative, investigative, or other court, tribunal, forum, or other proceeding, including any wage and hour litigation, or other litigation, against HealthPort.

6.3    In order to be eligible to receive a portion of the Gross Settlement Amount, his or her Claim Form must be timely and valid.  To be timely it must be postmarked by the Form Submission Deadline.  To be valid it must be completed in full and signed under penalty of perjury.

6.4    Within fourteen (14) days after the Form Submission Deadline, the Claims Administrator shall provide a spreadsheet to Class Counsel and to HealthPort that contains the following information:  (i) identifying information for each Claimant who submits a Claim Form, including name, address, and last four digits of their social security number; (ii) the date each Claim Form was received by the Claims Administrator (or the postmark date on the envelope if the Claim Form was received after the filing deadline); (iii) whether or not the Claim Form was complete or incomplete (and if incomplete, what information was missing); (iv) which Claims the Claims Administrator proposes to treat as Approved Claims; (v) the amount proposed to be paid to each Approved Claimant (before applicable taxes and withholdings); (vi) which Claim Forms the Claims Administrator has denied and the reasons for the denial; and (vii) which Claim Forms remain outstanding.  The Claims Administrator shall retain the originals of all Claim Forms (including the envelopes with the postmarks) received from Claimants, and shall make copies or the originals available to HealthPort Counsel or Class Counsel within three (3) business days upon request.

6.5    **Objections.**  Settlement Class Members who wish to object to the Settlement must file a written objection with the Court and serve copies of the filing on Class Counsel and HealthPort Counsel no later than forty-five (45) days from the initial mailing date of Notice.  Objections shall be deemed timely returned if they are postmarked on or before the 45th day after the initial mailing of the Notice.  The time to submit an objection will not be increased for returned mailings.  The objection shall include (a) the objecting person's full name, address, and telephone number; (b) the words "Notice of Objection" or "Formal Objection"; (c) in clear and concise terms, the legal and factual arguments supporting the objection to the proposed Settlement; and (d) a list identifying the witness(es) the objector may call to testify at the Final Approval Hearing and true and correct copies of any exhibit(s) the objector intends to offer.  Settlement Class Members who fail to make objections in the manner specified above will be deemed to have waived their ability to object to the Agreement, and, therefore, will be foreclosed from making any objection (whether by a subsequent objection, intervention, appeal, or otherwise) to the Agreement.  Settlement Class Members who have not filed and served timely written objections may not speak at the Final Approval Hearing.  If the Claims Administrator receives objections, the Claims Administrator shall provide Class Counsel and HealthPort Counsel with immediate notice of any such objection received.

13

6.6     **Appeal of Settlement Award.**  Within the time period set forth for the return of Claim Forms in Section 6.1, a Settlement Class Member may submit a written request to the Claims Administrator for information concerning the calculation of his or her Settlement Award. Upon request and as soon as reasonably practicable, the Claims Administrator shall provide a written description of the calculation upon which the Settlement Class Member's individual Settlement Award was based. If the Settlement Class Member disputes the accuracy of the mathematical calculation of his or her Settlement Award, or of any data that provides the basis for the calculation of his or her Settlement Award, the Settlement Class Member may submit a written appeal of the calculation to the Claims Administrator, which shall set forth the basis for, and any documentation supporting, his or her appeal. The written appeal also shall be submitted within the time period set forth for the return of Claim Forms in Section 6.1. No particular format shall be required for a Settlement Class Member to submit a written appeal, provided that the Settlement Class Member's written appeal reasonably identifies the Settlement Class Member and the Litigation and identifies the basis for appeal. Written requests for information or appeals shall be deemed timely submitted if they are postmarked on or before the last day for Settlement Class Members to return Claim Forms. Data provided by HealthPort in connection with the administration of this Settlement shall have a presumption of correctness. The Claims Administrator may consult with Class Counsel and HealthPort Counsel in resolving any appeal, but shall be the final decision maker with respect to any appeal under this Section.

6.7     **Exclusion Letters.**

6.7.1   A Settlement Class Member who wishes to exclude himself or herself from this Settlement, and from the release of claims pursuant to this Settlement, shall submit an Exclusion Letter. For an Exclusion Letter to be accepted it must be timely and valid. To be timely it must be received by the date indicated in the Notice, which shall be forty-five (45) days from the date on which the Claim Forms were initially mailed. To be valid, the Exclusion Letter shall contain a statement stating that the Settlement Class Member wishes to exclude himself or herself from the Class and must be signed under oath and dated.

6.7.2   A Settlement Class Member who submits an Exclusion Letter is not eligible to recover a share of the Gross Settlement Amount. If a Settlement Class Member submits both a Claim Form and an Exclusion Letter, the Exclusion Letter will govern.

6.7.3   The Claims Administrator shall maintain a list of persons who have excluded themselves and shall provide such list to the Parties upon request. The Claims Administrator shall retain the originals of all Exclusion Letters (including the envelopes with the postmarks) received from Class Members, and shall make copies or the originals available to HealthPort or Class Counsel within five (5) business days upon request.

6.8     **Distribution of Funds From the Qualified Settlement Fund.**  The Gross Settlement Amount shall be funded through the Qualified Settlement Fund. The timing of the payment to the Qualified Settlement Fund shall be as follows:

14

6.8.1   Within fourteen (14) days of the Court's entry of the Preliminary Approval Order, HealthPort shall transfer to the Qualified Settlement Fund amounts sufficient to the extent necessary to cover the Enhancement Awards approved by the Court.  If the Court does not approve the Settlement or enter the Final Approval Order and Judgment for any reason, or the Final Settlement Date does not occur for any reason, the Parties agree that Class Counsel shall repay HealthPort the amount of such Enhancement Awards from any Attorneys' Fees and Costs.

6.8.2   No funds shall be transferred to the Qualified Settlement Fund for purposes of Attorneys' Fees and Costs until the Court has approved an allocation plan to be submitted by Class Counsel with respect to the allocation of the Attorneys' Fees and Costs awarded by the Court.  Absent any appeal by Class Counsel of the award of Attorneys' Fees and Costs, HealthPort shall transfer to the Qualified Settlement Fund amounts sufficient to cover the amount of Attorneys' Fees and Costs awarded by the Court within ten (10) days after the Final Settlement Date or within ten (10) days after the date upon which the time to appeal the Court's approval of such allocation plan has expired, whichever is later.  If Class Counsel takes an appeal of the award of Attorneys' Fees and Costs, the Qualified Settlement Fund shall not transfer any funds for purposes of paying Attorneys' Fees and Costs until such appeal is fully and finally resolved such that all further rights of appeal have been exhausted.

6.8.3   Within fourteen (14) days of the Parties' approval of the report set forth in Section 6.4, HealthPort shall transfer to the Qualified Settlement Fund amounts sufficient to the extent necessary to cover Approved Claims.

6.8.4   Within fourteen (14) days of the transfer of the funds described in Section 6.8.3, above, the Claims Administrator shall wire amounts sufficient to cover (a) the amount of Attorneys' Fees and Costs awarded by the Court to Class Counsel, and (b) Settlement Awards for Named Plaintiff and the Opt-In Plaintiffs.  At that same time, the Claims Administrator shall mail checks for the Settlement Awards to Approved Claimants.  The Claims Administrator shall file proof of payment with the Court and provide the same to Class Counsel and HealthPort Counsel.

6.8.5   Approved Claimants will have one hundred and twenty (120) days to cash or deposit their Settlement Award.  Uncashed Settlement Awards shall be cancelled by the Claims Administrator if not cashed by the Approved Claimant within one hundred and twenty (120) days, at which point the Approved Claimant's claim will be deemed void and of no further force or effect.  An Approved Claimant's failure to cash a Settlement Award shall have no effect on the Approved Claimant's release of claims against HealthPort pursuant to this Agreement.

6.8.6    At the conclusion of the period set forth in Section 6.8.4, the Claims Administrator will return to HealthPort all unclaimed and/or uncashed Settlement Awards (including undelivered, returned or uncashed checks) and any other funds remaining in the Qualified Settlement Fund.

6.9    **Taxation of Settlement Awards and Enhancement Awards.**  The Parties agree that, subject to any advance ruling that may be requested by the Parties, the payments to Approved Claimants, Named Plaintiff and the Opt-In Plaintiffs shall be allocated such that Sixty-Six and Two-Thirds Percent (66.67%) constitutes wages subject to the withholding of all applicable local, state, and federal taxes and other withholdings, and Thirty-Three and One-Third Percent (33.33%) constitutes remuneration for damages separate and distinct from lost wages. Enhancement Awards payable to the Named Plaintiff and Opt-In Plaintiffs shall be payable as 1099 wages and the Claims Administrator will mail IRS forms 1099 and any other necessary tax withholding forms to Named Plaintiff and the Opt-In Plaintiffs.  HealthPort agrees to transfer to the Qualified Settlement Fund funds sufficient to pay the employer's share of any applicable taxes.  The Claims Administrator will mail IRS forms W-2 and 1099 and any other necessary tax withholding forms to Approved Claimants, Named Plaintiff and Opt-In Plaintiffs.  Recovering Class Members' individual Settlement Awards, including Named Plaintiff's and the Opt-In Plaintiffs', will be inclusive of all related tax obligations except for the employer's share of employment tax withholding obligations (e.g., FICA, FUTA, Medicare), which shall remain HealthPort's responsibility, and all Settlement Awards distributed to Approved Claimants will be net of any required withholdings and deductions.  The Approved Claimants will be responsible for correctly characterizing this compensation for tax purposes and paying any taxes owing on said amount.  Settlement Class Members agree that they are solely responsible for any tax obligations resulting from the payment of their respective Settlement Awards.

It is understood that HealthPort makes no representations or warranties with respect to the tax consequences of the payments referenced in this Agreement to Settlement Class Members or Class Counsel under the terms of this Agreement.  Settlement Class Members further acknowledge and agree that the payments set forth herein may result in taxable income to Settlement Class Members under applicable federal, state, and/or local tax laws.  With the exception of the employer's share of employment tax withholdings described in the previous paragraph, Settlement Class Members acknowledge and agree that they shall be solely responsible for any taxes that may be assessed against them relating to the payments made pursuant to this Agreement, including but not limited to all federal, state, and/or local taxes, and any other liens, obligations, claims, or consequences to them that may arise from this Agreement, and that they will not seek any indemnification from HealthPort with respect thereto.  Settlement Class Members further agree to indemnify and hold HealthPort harmless from any claims, demands, deficiencies, judgments or recoveries by any governmental entity against HealthPort for any amounts claimed in connection with money paid to Settlement Class Members pursuant to this Agreement which are properly taxable to Settlement Class Members, including amounts paid by HealthPort as taxes, attorneys' fees, fines, penalties, interest or otherwise, unless such liability is caused solely by HealthPort due to factors within its control.

6.10    **Settlement Awards Do Not Trigger Additional Benefits.**  All Settlement Awards shall be deemed to be income to Settlement Class Members solely in the year in which such payments are received by Settlement Class Members.  Such Settlement Awards shall not

16

entitle any Settlement Class Member to additional compensation or benefits under any company bonus, contest, or other compensation, stock compensation, incentive, or benefit plan or agreement in place during the period covered by the Settlement, nor will it entitle any Settlement Class Member to any increased retirement, 401(k) benefits or matching benefits, or deferred compensation or any other benefits. It is the intent of this Settlement that the Settlement Awards provided for in this Agreement are the sole payments to be made by HealthPort to Settlement Class Members, and that the Settlement Class Members are not entitled to any new or additional compensation or benefits as a result of having received the Settlement Awards.

7      COMPREHENSIVE WAIVERS, RELEASES, AND DISMISSALS

    7.1      As a material inducement to HealthPort to enter into this Agreement, subject to final approval by the Court of the Settlement, and for good and valuable consideration set forth herein, the receipt and sufficiency of which is hereby acknowledged, Named Plaintiff, all Opt-In Plaintiffs and all members of the Class other than those who submit Exclusion Letters ("**Releasing Class Members**"), do, as of the Final Settlement Date, hereby knowingly, voluntarily and irrevocably release, acquit, and forever discharge HealthPort to the fullest extent permitted by law from, and covenant not to sue or otherwise institute or cause to be instituted any legal proceedings against HealthPort for, any and all claims, actions, counts, suits, dues, rights, penalties, demands, damages, debts, sums of money, accounts, judgments, demands, duties, costs and expenses (other than those costs and expenses required to be paid pursuant to this Settlement Agreement), liens, charges, complaints, causes of action, obligations, or liability, whether known or unknown, for all claims that they brought or could have brought in their own right or on a representative basis, that were asserted in the Litigation or that could have been asserted but were not asserted in the Litigation related to the payment of wages, arising during the applicable settlement class periods, whether known or unknown, on the basis of, connected with, arising out of, or related in whole or in part to any or all of the alleged acts, omissions, facts, matters, transactions, circumstances, and occurrences that were directly or indirectly alleged, asserted, described, set forth or referred to in the Litigation, whether such allegations were or could have been based on common law or equity, or on any statute, rule, regulation, order, or law, whether federal, state, or local, which they ever had, now have, or may or might in the future have, whether arising out of events or occurrences from the beginning of time up to Final Settlement Date ("**Wage and Hour Released Claims**").

    7.2      Without limiting the generality of the foregoing, the Wage and Hour Released Claims include any and all Statutory Claims and Common Law and/or Equitable Claims listed in Sections 7.2.1 and 7.2.2 below related to alleged (i) claims that HealthPort failed to compensate for scanning non-billable medical records, or for time spent scanning non-billable medical records; (ii) claims that HealthPort failed to pay for time spent driving to and from medical clinics and healthcare facilities; (iii) off-the-clock work, which includes claims relating to the nonpayment of wages because work was performed off the clock and any recordkeeping violations that are a result of work being performed off the clock and, therefore, not being recorded; (iv) deductions from wages or commissions; (v) creation, retention, and preservation of time or pay records; (vi) claims that HealthPort failed to pay minimum wage for all hours worked, including claims related to how minimum wage is calculated or how frequently minimum wage is calculated; (vii) claims that HealthPort failed to pay overtime, including claims related to how overtime is calculated or how frequently overtime is calculated; (viii)

17

claims for failure to pay wages on termination or otherwise, or late payment of wages on termination or otherwise; and (ix) any claim for contribution to any HealthPort profit-sharing or other employee benefit plan as a result of any of the claims covered by the release given in this Section.

      7.2.1   **Statutory Claims.**  Any and all claims arising under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq.; the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq.; or any state or local statute, rule, regulation, ordinance or wage order relating to minimum wages, overtime, wage payments, deductions from wages, or recordkeeping.

      7.2.2   **Common Law and/or Equitable Claims.**  Any and all claims for breach of express or implied contract; breach of duty; breach of the (implied) covenant of good faith and fair dealing; breach of fiduciary duty; civil conspiracy; concealed fraud; concealment of material fact(s); conduct in discovery, including requests for discovery sanctions under Rule 37 or any other similar rule of civil procedure; conspiracy; constructive fraud; conversion; destruction of evidence; estoppel; false imprisonment; false representations; fraud; fraudulent concealment; fraudulent misrepresentation; intentional interference with contract; intentional misrepresentation; interference with contractual rights; malice; misrepresentation; negligent misrepresentation; oppression; promissory estoppel; quantum meruit; quasi contract restitution; spoliation of evidence; tortious interference with contractual relations; unjust enrichment; unjust enrichment; quantum meruit; restitution; unfair business practices; and claims for declaratory relief; an accounting; injunctive relief; punitive damages; and attorney's fees.

      7.3    The release given by the Releasing Class Members also includes a release of any and all damages and remedies which might otherwise be available to them arising from, on account of, or related to any Wage and Hour Released Claims, including, without limitation, claims for contract or tort damages of any type, claims for legal or equitable relief under either federal or state statutory and common law, claims for backpay or front pay, compensatory damages, liquidated damages, punitive damages, civil penalties, expense reimbursement, interest, and attorneys' fees and costs incurred (other than the Attorneys' Fees and Costs awarded by the Court in accordance with this Agreement); provided, however, that the Parties acknowledge that nothing in this Agreement shall constitute a general release of all claims.

      7.4    The Releasing Class Members understand and agree that this release is a full and final general release applying to all Wage and Hour Released Claims whether or not currently known, anticipated, or disclosed to any Releasing Class Member. In exchange for the good and valuable consideration set forth herein, the State Settlement Class Releasing Class Members waive any and all rights or benefits that they as individuals or the classes may now have as a result of the alleged facts, circumstances, and occurrences underlying the claims set forth in the Litigation under the terms of Section 1542(a) of the California Civil Code (or similar statute in effect in any other jurisdiction), which provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

8      MUTUAL FULL COOPERATION

8.1      The Parties and their undersigned counsel shall use their best efforts to effectuate this Settlement Agreement, and shall cooperate including the taking of all steps and efforts contemplated by this Settlement Agreement, and any other lawful steps and efforts which may become necessary by any order of the Court or otherwise, to effectuate this Settlement Agreement and to promptly seek and obtain the Court's preliminary and final approval of this Settlement Agreement (including providing class notice under Federal Rule of Civil Procedure 23) and to secure the prompt, complete and final dismissal with prejudice of the Litigation). In agreeing to cooperate fully with each other to accomplish the terms of this Settlement, the Parties promptly shall take all necessary action to implement this Agreement, including but not limited to, execution of all necessary documents and to take such other action as may reasonably be necessary to implement the terms of this Settlement. The Parties shall use their best efforts, including all efforts contemplated by this Settlement and any other efforts that may become necessary by order of the Court, or otherwise, to effectuate the terms of this Settlement.

8.2      HealthPort agrees that it will not discuss the terms of the Settlement with Class Members or putative Class Members prior to the Form Submission Deadline. HealthPort further agrees that it shall not contact any Class Member regarding his or her Claim, shall not make any record of the fact of making a Claim or the amount of the Claim in any Class Member's personnel file, will not retaliate against any Class Member for making a Claim, will not base any employment decision, directly or indirectly, on whether a Class Member has made or failed to make a Claim, and will not attempt to dissuade any Class Member, in any way, from making a Claim.

9      STATEMENT OF NO ADMISSION

9.1      Nothing contained in this Agreement shall be construed or deemed an admission of liability, culpability, or wrongdoing on the part of HealthPort, and HealthPort denies liability therefor, nor shall this Agreement constitute an admission by HealthPort as to any interpretation of laws or as to the merits, validity, or accuracy of any claims made against it in the Litigation. Likewise, nothing in this Agreement shall be construed or deemed an admission with regards to the validity of any of HealthPort's defenses or affirmative defenses. Each of the Parties has entered into this Settlement with the intention to avoid further disputes and litigation with the attendant inconvenience and expenses.

9.2      This Agreement, and all related documents, including all exhibits to this Agreement, the certification for settlement purposes entered pursuant to this Agreement, and any Claim Forms, Tax Declarations, and Exclusion Letters submitted by Class Members and all other actions taken in implementation of the Settlement, including any statements, discussions, or communications, and any materials prepared, exchanged, issued, or used during the course of the

negotiations leading to this Agreement are settlement documents and shall be inadmissible in evidence and shall not be used for any purpose in any judicial, arbitral, administrative, investigative, or other court, tribunal, forum, or proceeding, including any wage and hour or other litigation against HealthPort, for any purpose, except in an action or proceeding to approve, interpret, or enforce the terms of this Agreement.

9.3    The Claim Forms or Exclusion Letters, or other evidence produced or created by any Class Member in connection with the claims resolutions procedures pursuant to this Settlement, and any actions taken by HealthPort in response to such Claim Forms, Exclusion Letters, or other evidence, do not constitute, are not intended to constitute, and will not be deemed to constitute an admission by HealthPort of any violation of any federal, state, or local law, statute, ordinance, regulation, rule, or executive order, or any obligation or duty at law or in equity.

9.4    The Parties and Class Counsel agree that certification of the Settlement Class in accordance with the terms of this Agreement is for settlement purposes only. Nothing in this Agreement will be construed as an admission or acknowledgement of any kind that any class should be certified in this Litigation or in any other action or proceeding. Further, neither this Agreement, nor the Court's actions with regard to this Agreement, will be deemed admissible in any judicial, arbitral, administrative, investigative, or other court, tribunal, forum, or proceeding regarding the propriety of class certification or collective treatment. In the event that this Agreement is not approved by the Court, any appellate court, or otherwise fails to become effective and enforceable, or is terminated, HealthPort will not be deemed to have waived, limited, or affected in any way any of its objections or defenses in the Litigation. Such objections and defenses include, but are not limited to, HealthPort's objections and defenses to any class certification and FLSA collective action treatment.

10    **VOIDING THE AGREEMENT**

10.1    This Agreement is being entered into only for settlement purposes. If the Court does not approve the Settlement or enter the Final Approval Order and Judgment for any reason, or the Final Settlement Date does not occur for any reason, this Agreement will be deemed null, void ab initio and unenforceable. In that event (a) the Preliminary Approval Order, and all of its provisions, will be automatically vacated; (b) the Litigation will revert to the status that existed at the execution date of this Agreement, subject to the Parties' agreement to seek additional time to complete discovery from the Court; (c) no party shall be deemed to have waived any claims, objections, rights or defenses, or legal arguments or positions, including, but not limited to, claims or objections to class certification, and claims and defenses on the merits; (d) no term or draft of this Agreement, or any aspect of the Parties' settlement discussions, including related documentation, may be used or will be admissible in any subsequent proceedings, either in this Court or in any other judicial, arbitral, administrative, investigative, or other court, tribunal, forum, or other proceeding, including without limitation any wage and hour, or other litigation against HealthPort; and (e) HealthPort will pay all costs incurred by the Claims Administrator. In addition, HealthPort shall have no obligation to pay any of the Gross Settlement Amount.

10.2    In the event that the Court does not approve the Attorneys' Fees and Costs in the amount requested by Class Counsel, or in the event that the Attorneys' Fees and Costs requested

by Class Counsel is reduced, that finding shall not be a basis for rendering any unrelated section of Settlement null, void, or unenforceable. Class Counsel retain their right to appeal any decision by the Court regarding the Attorneys' Fees and Costs and such appeal shall not be deemed an appeal of the Settlement. The merits and substance of the Settlement shall be approved by the court separately and independently of the court's decisions regarding Class Counsel's application for Attorneys' Fees and Costs.

## 11    MISCELLANEOUS PROVISIONS

11.1    **Parties' Authority.** The respective signatures to this Agreement each represent that they are fully authorized to enter into this Settlement and bind the respective Parties to its terms and conditions.

11.2    **No Prior Assignments.** The Parties represent, covenant, and warrant that they have not directly or indirectly, assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action, or right released and discharged in this Settlement.

11.3    **Notices.** Unless otherwise specifically provided herein, all notices, demands, or other communications given hereunder shall be in writing and shall be deemed to have been duly given as of: (i) the date given, if given by hand delivery; (ii) within one (1) business day, if sent by overnight delivery services such as Federal Express or similar courier; or (iii) the third business day after mailing by United States registered or certified mail, return receipt requested. All notices given under this Agreement shall be addressed as follows:

11.3.1  **To the Class:**

C. Ryan Morgan, Esq.
Morgan & Morgan, PA
20 North Orange Avenue, 16th Floor
Orlando, FL 32802-4979
Facsimile: (407) 420-5956
Email: rmorgan@forthepeople.com

11.3.2  **To HealthPort:**

Matthew T. Gomes, Esq.
Nelson Mullins Riley & Scarborough LLP
Atlantic Station / 201 17th Street, NW
Suite 1700
Atlanta, GA 30363
Facsimile: (404) 322-6050
Email: matthew.gomes@nelsonmullins.com

11.4    **Return of Documents and Other Discovery.** Within thirty (30) days after the distribution of the Gross Settlement Amount, Named Plaintiff, Opt-In Plaintiffs and Class Counsel shall, without HealthPort Counsel's request, return or destroy all originals and duplicate

copies of all materials or information produced or obtained from HealthPort in the discovery process (whether by formal or informal discovery) and settlement process. This includes, but is not limited to, business records, proprietary information, compensation information, or any other documents, materials, summaries, or notes relating to this Litigation. If any material or information is destroyed, rather than returned to HealthPort by Named Plaintiff, Opt-In Plaintiffs and/or Class Counsel pursuant to this paragraph, that Named Plaintiff, Opt-In Plaintiff and/or Class Counsel shall provide an affidavit to HealthPort within seven (7) days attesting to and verifying the destruction thereof.

11.5    **No Liability for Disbursements Related to Settlement Fund.**  No person shall have any claim against HealthPort, Class Counsel, HealthPort Counsel, the Claims Administrator, or any agent designated by HealthPort based on distributions made substantially in accordance with this Agreement or court orders, including the allocation of Settlement Awards to each Class Member.

11.6    **No Collateral Attack.**  This Agreement shall not be subject to collateral attack by any individual.  Prohibited collateral attacks shall include, but not be limited to, claims that a Class Member's Settlement Award was improperly calculated or adjusted.

11.7    **Confidentiality.**  As a free and voluntary act, Mary Jackson, individually and on behalf of the Class, agrees that as an essential and material element of this Agreement, she will comply with the following provisions regarding confidentiality:

    11.7.1    Except as otherwise specifically provided in this Agreement, Mary Jackson will not disclose or characterize (in whole or in part) any of the terms or provisions of this Agreement or her respective release of claims against HealthPort, her individual Settlement Awards, or any of the negotiations leading to the making of this Agreement to any other person or entity, other than in documents filed in connection with the joint motion for preliminary approval or final approval of this settlement, except to their respective attorneys, spouses, accountants or tax advisors, or as otherwise required by law or legal process.

    11.7.2    It shall not be a breach of this Agreement for Mary Jackson to disclose her individual Settlement Award to her attorneys, spouse, accountants or tax advisors; provided, however that the Plaintiff shall inform her attorneys, spouse, accountants or tax advisors of the terms of the confidentiality provisions contained in this Agreement.

    11.7.3    In response to any inquiry made of Mary Jackson or Class Counsel with respect to the making of this Agreement and/or its terms and provisions, the parties shall respond only that "the matter was resolved."

    11.7.4    Mary Jackson agrees and acknowledges that any breach of the foregoing provisions concerning confidentiality by her shall be a material breach of this Agreement in its entirety, and that upon such material breach, HealthPort's obligations under this Agreement as to Mary Jackson,

including but not limited to payment of her Settlement Award, if unpaid, shall cease and be of no effect, and that Mary Jackson shall be liable to HealthPort in the full amount of the Settlement Award, if any, previously paid by HealthPort to Mary Jackson as well as for other equitable and legal relief.

11.7.5   In further consideration for their Enhancement Awards, Opt-In Plaintiffs shall execute separate confidentiality and non-disclosure agreements containing language similar to Subsections 11.7.1 through 11.7.4.

11.8   **Change of Time Periods.**   The time periods and dates described in this Agreement regarding notices, hearings, and other events are subject to approval and change by the Court or by the written agreement of counsel for the Parties without notice to the Class.

11.9   **Voluntary Agreement.**   The Parties executed this Agreement voluntarily and without duress or undue influence.

11.10   **Binding on Successors.**   This Agreement will bind and inure to the benefit of the Parties' respective successors, assigns, legatees, heirs, and personal representatives.

11.11   **Parties Represented by Counsel.**   The Parties acknowledge that:  (a) they have been represented by independent counsel of their own choosing during the negotiation and preparation of this Agreement; (b) their respective counsel fully explained to them the contents and legal effect of this Agreement; (c) they have read this Agreement themselves; and (d) they fully understand the contents and legal effect of this Agreement.

11.12   **Authorization.**   Each Party warrants and represents that there are no liens or assignments, or claims of lien or assignments in law or equity or otherwise, against any of the claims or causes of action released by this Agreement, and further, that each Party is fully entitled and duly authorized to give this complete and final release and discharge.

11.13   **Entire Agreement.**   This Agreement and attached exhibits, as well as the Preliminary Approval Order, class certification order, and Final Approval Order and Judgment, which shall be drafted by the Parties, contain the entire agreement between the Parties and constitute the complete, final, and exclusive embodiment of their agreement with respect to this subject matter. This Agreement is executed without reliance upon any promise, representation, or warranty by any Party or any representative of a Party, other than those expressly set forth in this Agreement.

11.14   **Construction.**   This Agreement has been negotiated by the Parties and shall be interpreted fairly in accordance with its terms and without any construction in favor of or against any of the Parties. The interpretation and construction of this Agreement shall be subject to the following provisions:  (a) words importing the singular meaning include where the context so admits the plural meaning and vice versa; (b) the terms "and" and "or" as used herein shall mean both the conjunctive and the disjunctive, so that one word or the other may be taken accordingly as the one or the other (i.e., "and/or"); (c) the word "any" shall mean "all" or "one out of several"; (d) references to any person shall include natural persons and partnerships, firms and other incorporated bodies and all other legal persons of whatever kind and however constituted;

(e) the words "include", "includes" and "including" are to be construed as if they were immediately followed by the words "without limitation"; and (f) captions and headings used herein are inserted for convenience only and are in no way intended to describe, interpret, define or limit the scope, extent or intent of this Agreement.

11.15   **Headings.**   The various headings in this Agreement are used solely for the convenience of the Parties and shall not be used to interpret, define, limit, extend, or describe the scope of this Agreement or the intent of any provision in this Agreement.

11.16   **Exhibits.**   The attached exhibits are integral parts of this Agreement and are incorporated by reference into this Agreement as though fully set forth herein.

11.17   **Modifications and Amendments.**   No amendment, change or modification to any part of this Agreement is valid unless in writing, signed by the Parties or their counsel, and approved by the Court.

11.18   **Choice of Law and Forum Selection.**   This Agreement is governed by the laws of the State of Georgia, and should be interpreted in accordance with those laws and without regard to conflict of laws principles.   Each party hereby irrevocably submits itself to and consents to the exclusive jurisdiction of the federal and state courts with jurisdiction over Fulton County, Georgia, for the purposes of any claim arising from or relating to this Agreement, and hereby waives, and agrees not to assert, by way of motion, as a defense, or otherwise, in any such claim, any argument that she or it is not personally subject to the jurisdiction of such court(s), that the claim is brought in an inconvenient forum, or that the venue of the claim is improper.

11.19   **Further Assurances.**   The Parties will each execute and deliver any additional documents or perform any additional acts reasonably necessary to carry out the express intent of this Agreement.

11.20   **Execution Date.**   This Agreement will be deemed executed on the last date of execution by all of the undersigned.

11.21   **Counterparts and Copies.**   This Agreement may be executed in counterparts, each of which will constitute an original, but all of which together will constitute the same instrument.   Several signature pages may be collected and annexed to one or more documents to form a complete executed Agreement.   Photocopies of the executed Agreement may be treated as originals.

11.22   **Recitals.**   The recitals are incorporated into this Agreement.

11.23   **Severability.**   Whenever possible, each provision of this Agreement shall be interpreted in such a manner as to be effective and valid under applicable law and to carry out each provision herein to the greatest extent possible, but if any provision of this Agreement is held to be void, voidable, invalid, illegal or for any other reason unenforceable, the Parties agree that the validity, legality and enforceability of the remaining provisions of this Agreement will not be affected or impaired thereby, and will be interpreted so as to effect, as closely as possible, the intent of the Parties hereto.

13.24 **No Conflict Intended.** Any inconsistency between this Agreement and the attached exhibits shall be resolved in favor of this Agreement.

THE PARTIES AND CLASS COUNSEL HAVE AGREED TO THE TERMS OF THIS SETTLEMENT. NAMED PLAINTIFF ACKNOWLEDGES AND AGREES THAT SHE HAS CARFULLY READ AND VOLUNTARILY SIGNED THIS AGREEMENT, THAT SHE HAS HAD ADEQUATE TIME TO CONSIDER THE TERMS OF THIS AGREEMENT, THAT SHE HAS HAD AN OPPORTUNITY TO CONSULT WITH AN ATTORNEY OF HER CHOICE, AND THAT SHE SIGNS THIS AGREEMENT WITH THE INTENT OF RELEASING HEALTHPORT FROM ANY AND ALL CLAIMS SET FORTH HEREIN.

** The rest of this page intentionally has been left blank **

The undersigned acknowledges that she has read and understands the foregoing Confidential Settlement Agreement, and that the undersigned agrees to the same and voluntarily executes the same this ____ day of _____ 2011.
2012

_____
Mary Jackson

The undersigned acknowledges that its authorized signatory has read and understands the foregoing Confidential Settlement Agreement, and that the undersigned agrees to the same and voluntarily executes the same this 29 day of _____ January _____ 2011, 2013

HealthPort Technologies, LLC

By: _____

Print Name: Brian Grazzini

Title: CFO